<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHRISTOPHER CHIUCCHI : | |
| : | |
| Plaintiff, : | Civil Action No. 15-3460 (ES) |
| : | |
| v. : | OPINION |
| : | |
| COMMISSIONER OF SOCIAL : | |
| SECURITY : | |
| : | |
| Defendant. : | |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Christopher Chiucchi's ("Plaintiff") appeal seeking review of Administrative Law Judge Joel H. Friedman's (the "ALJ" or "ALJ Friedman") decision denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth herein, the Court AFFIRMS the Commissioner's decision.

**I. Background**

    **A. Procedural History**

Plaintiff filed applications for DIB and SSI on June 19, 2006, alleging disability as of November 1, 2005, due to depression, attention deficit hyperactivity disorder ("ADHD"), and drug and alcohol addiction. (D.E. No. 7, Administrative Record ("Tr.") at 70-72). The applications were denied initially (*id.* at 30-32) and on reconsideration (*id.* at 35-41). On September 28, 2007,

Plaintiff requested a hearing before an Administrative Law Judge. (*Id.* at 42). A hearing was held on September 19, 2011 before ALJ Friedman. On June 1, 2009, ALJ Friedman found that Plaintiff was not disabled because he could perform other work available in the national economy. (*Id.* at 252-62).

Thereafter, Plaintiff sought Appeals Council review. (*Id.* at 266-67). On October 8, 2010, the Appeals Council vacated the ALJ's decision and remanded for further consideration of Plaintiff's residual functional capacity ("RFC") in light of the results of a Purdue Pegboard Exam,[1] which were contained in a January 25, 2005 report from the Division of Vocational Rehabilitation ("DVR Report").[2] Specifically, Plaintiff's pegboard-exam results indicated that his dexterity levels were in the first percentile, "meaning [Plaintiff] would have difficulty in jobs that require speed and accuracy in the perceptual motor process." (*Id.* at 264).

ALJ Friedman held hearings on February 8, 2011 (*id.* at 450-63) and April 12, 2012 (*id.* at 464-506). On July 25, 2012, the ALJ issued a decision in which he adjusted Plaintiff's RFC and limited Plaintiff to work not requiring speed or accuracy in fingering. (*Id.* at 14-25). Nevertheless, the ALJ found that Plaintiff was not disabled because he could perform other work available in the national economy. (*Id.* at 24). Plaintiff sought Appeals Council Review on August 25, 2012. (*Id.* at 11-12). On March 24, 2015, the Appeals Council found no grounds for review, making the

---

[1] The Purdue Pegboard Exam tests an individual's dexterity for quickness and accuracy in performing tasks. (*Id.* at 264).

[2] The Division of Rehabilitation referred Plaintiff for a psychological evaluation, which was administered by Alan S. Gordon, Ed.D., on December 22, 2004. (*Id.* at 243). The evaluation consisted of a Weschler Adult Intelligence Scale-III test, a Wide Range Achievement Test-3, a Purdue Pegboard Exam, a Bender Visual Motor Gestalt Test, a Kuder Career Search, a House-Tree-Person Projective Drawing Test, a Sentence Completion Form, and a clinical interview. (*See id.*). Dr. Gordon provided a seven-page report summarizing the evaluation results and his recommendations. (*Id.* at 243-49).

ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). (*Id.* at 8-11).

On March 19, 2015, Plaintiff appealed the Commissioner's decision by filing a Complaint with this Court. (D.E. No. 1, Complaint ("Compl.")). The parties briefed the issues raised by Plaintiff's appeal. (*See* D.E. No. 11, Brief in Support of Plaintiff ("Pl. Mov. Br."); D.E. No. 12, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")). The matter is now ripe for resolution.

## II. Legal Standard

### A. Standard for Awarding Benefits

To be eligible for DIB or SSI under Titles II and XVI of the Act, a claimant must establish that he or she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). Additionally, a claimant seeking DIB must satisfy the insured status requirements set forth in § 423(c), and a claimant seeking SSI must fall within the income and resource limits set forth in 42 U.S.C. §§ 1382a and 1382b. An individual is deemed disabled under both titles if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(a). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(B).

The Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). If the determination at a particular step is

dispositive of whether the claimant is or is not disabled, the inquiry ends. 20 C.F.R. § 404.1520(a)(4). The burden rests on the claimant to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[3] At step five, the burden shifts to the Commissioner. *Id.*

At step one, the claimant must demonstrate that he is not engaging in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§ 416.972(a), (b). If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. § 404.1520(b). If the claimant demonstrates he is not engaging in substantial gainful activity, the analysis proceeds to the second step.

At step two, the claimant must demonstrate that his medically determinable impairment or the combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

At step three, the ALJ must assess the medical evidence and determine whether the claimant's impairment or combination of impairments meet or medically equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Upon a finding that the claimant meets or medically equals a listing, the claimant is presumed to be disabled and is automatically entitled to benefits. 20 C.F.R. § 416.920(d).

---

[3]     Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

4

If a claimant is not found to be disabled at step three, the analysis continues to step four in which the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). An RFC is defined as "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all relevant evidence when determining an individual's RFC, including medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). If the plaintiff lacks the RFC to perform any work he has done in the past, the analysis proceeds.

In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his RFC and vocational factors. 20 C.F.R. § 404.1520(a)(4)(v).

**B. Standard of Review**

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

## III. ALJ Friedman's Decision

ALJ Friedman applied the five-step disability evaluation process required by 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) and determined that Plaintiff was not disabled under the Act. (Tr. at 14-25). At step one, the ALJ found that Plaintiff met the insured status requirement of the Act through June 20, 2003, and that Plaintiff had not engaged in any substantial gainful activity since the alleged onset date of disability. (*Id.* at 20). At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, ADHD, and history of substance abuse. (*Id.*). At step three, the ALJ concluded that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 21).

At step four, the ALJ found that Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels" and was "limited to being able to perform simple routine low stress jobs in a low contact setting with the public and coworkers not requiring speed and accuracy in fingering." (*Id.* at 22). In his analysis, the ALJ concluded that Plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 22-23). The ALJ gave little weight to the opinion of a physician who indicated on a welfare benefits form that Plaintiff "could not work for more than 90 days and that Plaintiff was a likely

6

candidate for SSI." (*Id*. at 23). Additionally, the ALJ gave some weight to the opinion of a consultative examiner, Dr. Baharlias, "who opined that [Plaintiff] was only markedly limited in one function, which was in carrying out of complex instructions and had moderate limitations in other aspects of complex instructions." (*Id.*). Finally, at step four, the ALJ concluded that based on this RFC, Plaintiff was unable to perform any past relevant work. (*Id.*).

At step five, the ALJ determined that based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including cleaner/housekeeper and industrial cleaner. (*Id.* at 24). The ALJ based this determination on the vocational expert's testimony regarding a hypothetical individual with Plaintiff's vocational profile who was restricted to "low stress, 1-2 step jobs, involving no contact with the general public and low contact with co-workers and supervisors and not requiring speed or accuracy in fingering." (*Id.*).

Notably, at the hearing, the ALJ and the vocational expert discussed at length the nature of the limitations with respect to fingering and manual dexterity. (*See id.* at 490-501). Initially, the ALJ described that the hypothetical individual "would have difficulty doing a job that requires speed and accuracy, as far as manual dexterity—finger and manual dexterity." (*Id.* at 490). The vocational expert asked the ALJ to quantify this limitation further, noting that "if the fingering and manual dexterity is an issue and a pretty severe issue, then there's probably going to be no work given the rest of the hypothetical." (*Id.*). The ALJ stated that the limitation did not appear to result from a physical impairment and clarified that the limitation pertained to pace and not to consistency. (*Id.* at 491). Next, the ALJ noted that this limitation would affect the ability to perform jobs suggested by the previous vocational expert, such as hand packer or assembler, which required rapid use of fingers. (*Id.*). In response, the vocational expert repeatedly clarified that

7

manual dexterity refers to the ability to use both hands. (*See id.* at 492-94). The ALJ indicated that the limitation did not involve a total inability to use fingers, but that the limitation involved difficulty with speed and accuracy in the use of fingers and difficulty in the "type of repetitive fine motion" that a pegboard exam would asses. (*Id.* at 496-97). After this clarification, the vocational expert responded to hypotheticals indicating that the hypothetical individual could perform the jobs of cleaner/housekeeper and industrial cleaner. (*Id.* at 494, 497-98).

After the ALJ's questioning of the vocational expert, Plaintiff's counsel asked the vocational expert if a score in the first percentile on the Purdue Pegboard Exam would help to quantify the limitation in manual dexterity. (*Id.* at 500). The vocational expert testified that an individual with that level of manual dexterity would be unable to work. (*Id.* at 501). Nonetheless, the ALJ found that the evidence in the record did not support that Plaintiff had a limitation with respect to manual dexterity as suggested by the results of the Purdue Pegboard Exam. (*Id.* at 24-25).

Specifically, the ALJ found "that there [was] no evidence of any physical impairment that would explain the claimant's poor performance on a pegboard test in 2005" and rejected the contention of Plaintiff's counsel that Plaintiff's ADHD could cause this poor performance or limitation. (*Id.* at 24, 502). The ALJ noted that the same DVR Report indicated that Plaintiff's hobbies included guitar, bowling and shooting pool, and that all of these hobbies would involve manual dexterity. (*Id.* at 24). In addition, the DVR Report identified Plaintiff's interest in "mechanical activities" and noted that "job related titles to consider would be carpenter, plumber, welder (which [Plaintiff] had studied at Vo-Tech) or machine operator." (*Id.* at 24-25). Finally, the ALJ stated that Plaintiff "alleged no hand impairments, played varsity football and wrestling in high school, drives a car, uses a computer, has done power washing, worked in a pizzeria, etc.,

all of which involve at least the manual dexterity needed to do the jobs cited by the vocational expert." (*Id.* at 25). Thus, the ALJ concluded that Plaintiff could perform the jobs suggested by the vocational expert and was capable of performing work available in the national economy, necessitating a finding that Plaintiff was not disabled under the Act. (*Id.*).

## IV. Discussion

On appeal, Plaintiff argues that the ALJ's decision contains legal error and is not supported by substantial evidence, therefore warranting reversal, or in the alternative, remand. (Pl. Mov. Br. at 9). In particular, Plaintiff asserts the ALJ's RFC assessment is not supported by substantial evidence because the ALJ (1) improperly discounted the results of the Purdue Pegboard Exam when assessing Plaintiff's RFC (*see id.* 12-18), and (2) failed to accurately portray Plaintiff's limitations in the hypotheticals posed to the vocational expert (*see id.* at 18-21). In addition, Plaintiff argues that reversal is appropriate because Plaintiff submitted his applications over ten years ago and any further delay would contravene justice. (*Id.* at 21-22). The Court addresses each argument in turn.

### A. The ALJ Properly Considered and Discounted the Results of the Purdue Pegboard Exam

Plaintiff argues that the ALJ failed to consider the results of the Purdue Pegboard Exam as required by the Appeals Council remand order, thus rendering an RFC that was not supported by substantial evidence. Specifically, Plaintiff contends that the Appeals Council "validated a piece of evidence in the form of an objective test which proved that plaintiff's manual dexterity in both hands rendered him in the lowest possible range, 1% out of 100%." (Pl. Mov. Br. at 12; Tr. at 320). Plaintiff further contends:

> [t]here was no contradictory evidence regarding plaintiff's capabilities at manual dexterity and indeed none are present in the record nor recited in the decision. The Commissioner—through its own Appeals Council—advised the ALJ that he was

9

> "stuck" with the uncontradicted and objectivity of this evidence and thus was duty bound to adjust his RFC accordingly and present that reconsidered RFC to a VE.

(Pl. Mov. Br. at 13). Plaintiff argues that based on the results of the Purdue Pegboard Exam and the absence of contradictory evidence in the record, the ALJ erred "by changing the RFC to restrict plaintiff's speed and accuracy only in fingering objects instead of manipulating objects." (*Id.* at 14) (emphasis omitted).

While the Appeals Council remand order did instruct the ALJ to consider the results of the Purdue Pegboard Exam, the remand order neither "validates" nor leaves the ALJ "stuck" with this limitation to the extent that Plaintiff claims. Specifically, the order states that on remand the ALJ will:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations associated with the claimant's dexterity (Social Security Ruling 96-8p). In so doing, evaluate the nontreating source opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the nontreating source to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairment. (20 CFR 404.1512 and 416.912).

(Tr. at 265). Thus, the proper inquiry on review is not whether the ALJ adopted the results of the Purdue Pegboard Exam into the RFC, but whether the ALJ complied with 20 C.F.R. §§ 404.1527 and 416.927 and the relevant Social Security Rulings ("SSRs") when discounting the results of the Purdue Pegboard Exam in the RFC assessment.

Under both 20 C.F.R. §§ 404.1527 and 416.927, an ALJ considers the following factors in deciding the weight to give to any medical opinion: (i) the examining relationship; (ii) the treatment relationship; (iii) the supportability of the opinion; (iv) the consistency of the opinion; (v) the specialization of the medical source; and (vi) any other factors raised by the claimant. *See*

10

20 C.F.R. §§ 404.1527(c), 416.927(c).  With respect to the treatment-relationship factor, ALJs generally give more weight to the opinions of treating sources than to those of non-treating sources. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Fargnoli*, 247 F.3d at 43 (noting that a treating physician's opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record").  Here, the DVR Report is a medical report from a non-treating source and is thus not entitled to the same weight as a report from a treating source.

Additionally, the supportability and consistency of the DVR Report is relevant.  In considering supportability, an ALJ should assess "the degree to which [the medical source] provide[s] supporting explanations for their opinions."  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  In considering consistency, an ALJ should asses the degree to which the opinion is consistent with the record as a whole.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  Similarly, SSR 96-2p dictates that in order for a medical opinion to be given controlling weight, the opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not be inconsistent with other evidence in the record.  SSR 96-2p, 1996 WL 374188, at *1.

In addition to these regulations, the Third Circuit has made clear that an ALJ may discount medical opinion evidence that is not supported by explanations or that is inconsistent with other evidence in the record.  *See Plummer v. Apfel*, 186 F.3d 422, 429-30 (3d Cir. 1999) ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); *see also Woolfolk v. Comm'r of Soc. Sec.*, 89 F. App'x 766, 768 (3d Cir. 2004) (holding that the ALJ did not err by giving less weight to a medical opinion indicating the plaintiff was unable to work when other evidence indicated that the

plaintiff's pain was improving); *Money v. Barnhart*, 91 F. App'x 210, 213 (3d Cir. 2004) (holding that the ALJ was not required to give controlling weight to opinions of treating physicians when those opinions were "both internally inconsistent and inconsistent with other medical evidence").

In contrast, an ALJ errs when discounting medical opinion evidence without articulating a reason for doing so or when failing to address relevant evidence in the record. *Fargnoli*, 247 F.3d at 41-42 (holding that the ALJ erred by including only a sparse discussion of medical evidence so the reviewing court could not "tell if significant probative evidence was not credited or simply ignored"); *Burnett v. Comm'r of Soc. Sec. Admin*., 220 F.3d 112, 121 (3d Cir. 2000) (holding that the ALJ erred by failing to mention and address relevant medical and non-medical evidence that was contradictory to the ALJ's RFC assessment).

Most notably, the Third Circuit in *Rutherford v. Barnhart* specifically addressed the issue of whether an ALJ properly discounted the results of a pegboard exam under 20 C.F.R. § 416.927. 399 F.3d 546, 554 (3d Cir. 2005). In *Rutherford*, the plaintiff was administered a Purdue Pegboard Exam during a vocational examination performed by a rehabilitation consultant, and the results "placed the [plaintiff's] hand speed in the lowest one percentile for all norm groups." *Id.* at 550. The Third Circuit noted:

> [w]hile the ALJ acknowledged those results, he declined to include lack of dexterity as a limitation for purposes of the RFC determination because he found such a limitation to be inconsistent with Rutherford's testimony that she could button buttons and work zippers. Instead the ALJ took account of the extent of Rutherford's dexterity by including a hypothetical question regarding an individual capable of not more than occasional handling and fingering with the right upper extremity.

*Id.* at 555. The Third Circuit held that this reasoning was sufficient for the ALJ to discount the results of the pegboard exam under § 416.927 and to include the limitation of "not more than

occasional handling and fingering with the right upper extremity" rather than including a limitation of lack of manual dexterity. *Id.*

Based on these standards for discounting medical opinion evidence, the Court finds that the ALJ did not err by discounting the results of the Purdue Pegboard Exam from the DVR Report. Like the ALJ in *Rutherford*, ALJ Friedman cited contradictory evidence in the record when discounting the pegboard exam results. First, the ALJ addressed the supportability of the results, noting "that there [was] no evidence of any physical impairment that would explain the claimant's poor performance on a pegboard test in 2005." (Tr. at 24). In this sense, the DVR Report lacked "supporting explanations for [its] opinion[]" that Plaintiff would have difficulty in jobs that require speed and accuracy in the perceptual motor processes. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

Next, the ALJ addressed the internal inconsistency of the DVR Report. As noted *supra*, the ALJ explained that (i) Plaintiff's hobbies (e.g., guitar, bowling and shooting pool) all involve manual dexterity (Tr. at 24); (ii) the DVR Report identified Plaintiff's interest in "mechanical activities" and noted that "job related titles to consider would be carpenter, plumber, welder (which [Plaintiff] had studied at Vo-Tech) or machine operator" (*id.* at 24-25); and (iii) Plaintiff "alleged no hand impairments, played varsity football and wrestling in high school, drives a car, uses a computer, has done power washing, worked in a pizzeria, etc." and that "all of [these activities] involve at least the manual dexterity needed to do the jobs cited by the vocational expert" (*id.* at 25). By addressing these internal inconsistencies in the DVR Report and the contradictory evidence in the record, the ALJ adequately "assess[ed] the degree to which the opinion [from the DVR Report] is consistent with the record as a whole." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

13

Finally, like the ALJ in *Rutherford*, ALJ Friedman did give limited weight to the pegboard exam results by limiting Plaintiff to jobs not requiring speed or accuracy in fingering. (Tr. at 24). In sum, the Court finds that the ALJ's decision to discount the results of the Purdue Pegboard Exam and to limit Plaintiff to jobs not requiring speed and accuracy in fingering (rather than a more extensive limitation on manual dexterity) complies with 20 C.F.R. §§ 404.1527 and 416.927 and is supported by substantial evidence.

### B. The ALJ's Hypotheticals to the Vocational Expert Adequately Conveyed Plaintiff's Credibly Established Limitations

Next, Plaintiff argues that the ALJ erred by including more extensive limitations on Plaintiff's ability to work in the hypotheticals posed to the vocational expert than in the limitations contained in the RFC. (Pl. Mov. Br. at 18-21). In particular, Plaintiff notes that the ALJ initially posed a hypothetical in which the individual was limited to the exertional demands of light work, no contact with the general public and low contact with coworkers and supervisors, and difficulty in jobs requiring speed and accuracy in fingering and manual dexterity. (Tr. at 490; Pl. Mov. Br. at 17-18). Plaintiff contends that these limitations were established by the evidence in the record and that the ALJ "changed [these limitations] to take the form of slight limitations in order to comport with jobs recited by the VE which couldn't be done on the basis of the original hypothetical." (Pl. Mov. Br. 20-21). In other words, Plaintiff argues that the ALJ should have incorporated these limitations from the initial hypothetical question into the RFC, rather than the less extensive limitations (i.e., no exertional demand, low contact setting with the public and coworkers, not requiring speed and accuracy in fingering) that the ALJ ultimately included in the RFC assessment. (*See id.* at 18).

Generally, hypothetical questions posed to a vocational expert must convey all of the claimant's impairments established by the record in order for the vocational expert's testimony to

14

be considered substantial evidence. *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Further, an ALJ must convey the claimant's limitations with specificity when posing hypothetical questions to a vocational expert. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (holding that a limitation phrased as "simple repetitive one, two-step tasks" did not specifically convey claimant's intellectual limitations). Nonetheless, an ALJ need not include limitations without support in the record when submitting hypothetical questions to the vocational expert. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 206 (3d Cir. 2008); *Plummer*, 186 F.3d at 431–32 (holding that the ALJ was not required to include a limitation in a hypothetical that the claimant was precluded from jobs requiring the use of his hands on demand because this limitation was inconsistent with other evidence in the record). Accordingly, an ALJ may pose an alternative hypothetical to a vocational expert that does not portray the specific limitations of the claimant, but may only rely on a hypothetical that accurately conveys all of the claimant's credibly established limitations when determining disability. *See Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir. 1984) (noting that an ALJ may proffer a variety of hypotheticals to the vocational expert, but need only consider a particular hypothetical if it "accurately portrays the claimant's individual physical and mental impairments").

First, the Court finds that the ALJ's RFC assessment is supported by substantial evidence. While Plaintiff claims the additional limitations contained in the first hypothetical were supported by the record, the Court disagrees. Plaintiff contends that the ALJ should have included an exertional limitation, but, as Defendant amply points out, Plaintiff fails to identify any evidence in the record that would establish such a limitation. (*See* Def. Opp. Br. at 8). Similarly, while Plaintiff argues for a limitation of no contact with the general public, he does not identify specific evidence that would support such a limitation. (*Id.*). Indeed, the consultative examiner, Dr.

Baharlias, found that Plaintiff had only mild limitations in interacting appropriately with the public and supervisors and had mild to no limitation in interacting appropriately with coworkers. (Tr. at 331). Additionally, during the 2005 DVR evaluation, Plaintiff stated, "I like to be around people. I'm told I'm personable." (*Id.* at 318). As such, the record supports the ALJ's decision to include a limitation of low contact setting with the public and coworkers. (*Id.* at 22). Finally, as discussed in detail *supra*, the ALJ provided sufficient reasoning for discounting the results of the pegboard exam and limiting Plaintiff only to jobs not requiring speed and accuracy in fingering. In sum, the ALJ relied on "such relevant evidence as a reasonable mind might accept as adequate to support" the limitations contained in the RFC assessment. *Richardson*, 402 U.S. at 401. Thus, the RFC assessment is supported by substantial evidence.

Having determined that the RFC assessment is supported by substantial evidence, the Court next addresses whether the hypothetical questions that the ALJ relied on at step five accurately and specifically conveyed all of Plaintiff's credibly established limitations to work requiring "simple routine low stress jobs in a low contact setting with the public and coworkers not requiring speed and accuracy in fingering." (Tr. at 22). First, the initial hypothetical that the ALJ posed to the vocational expert sufficiently conveys Plaintiff's limitations to simple routine low stress jobs in a low contact setting with the public and coworkers. (*See id.* at 490). This hypothetical entailed an individual with Plaintiff's vocational profile who was limited to the exertional demands of light work, one- to two-step jobs in a low-stress setting, no contact with the general public and low contact with coworkers and supervisors, and difficulty in jobs requiring speed and accuracy in fingering and manual dexterity. (*Id.*)

While the hypothetical's no-contact-with-the-general-public limitation may not directly align with the RFC's low-contact-setting-with-the-public limitation, an ALJ may rely on a

16

hypothetical that contains more restrictive limitations than those in the RFC. This is because the jobs that could be performed by an individual with greater limitations could also be performed by an individual with fewer limitations. *See Daniels v. Astrue*, No. 12-30056, 2013 WL 1385396, at *5 (D. Mass. Apr. 2, 2013) ("[T]his discrepancy is immaterial because the universe of jobs identified by the VE in response to the hypothetical is smaller than the universe of jobs contemplated by the RFC."). In other words, an individual who was restricted to low contact with the public would be able to perform any jobs that require no contact with the public. Thus, the initial hypothetical that the ALJ posed to the vocational expert adequately conveyed Plaintiff's limitations to work requiring simple routine low stress jobs in a low contact setting with the public and coworkers.[4]

Next, the Court finds that while the ALJ altered his exact descriptions of Plaintiff's limitations regarding fingering and manual dexterity throughout the testimony of the vocational expert, the ALJ ultimately portrayed Plaintiff's limitation regarding speed and accuracy in fingering with enough accuracy and specificity for the vocational expert's testimony to serve as substantial evidence at step five. (*See* Tr. at 490-501). Initially, the ALJ described the hypothetical individual as having "difficulty doing a job that requires speed and accuracy, as far as manual dexterity—finger and manual dexterity." (*Id.* at 490). While this initial description may lack adequate specificity, the ALJ provided further clarification in his dialogue with the vocational expert. The ALJ indicated that Plaintiff "could use his fingers" but would struggle with jobs that

---

[4] Relatedly, the Court notes that the ALJ did not err by including more extensive limitations on Plaintiff's ability to work in the initial hypothetical question posed to the vocational expert than in the final RFC assessment. The ALJ was not required to adopt these additional limitations into the RFC simply because they were contained in the first hypothetical; in fact, it would be error to include limitations not credibly established by the record when relying on a vocational expert's testimony to make a disability determination. *Rutherford*, 399 F.3d at 554. To the extent Plaintiff contends that the ALJ reduced Plaintiff's limitations "in order to comport with jobs recited by the VE which couldn't be done on the basis of the original hypothetical," (Pl. Mov. Br. at 20-21), the Court rejects this argument for the reasons discussed in Section IV(A), *supra*.

17

"would require speed and accuracy in his fingering." (*Id.* at 491). The ALJ later described the limitation as restricting Plaintiff to jobs "that would not require rapid fine fingering." (*Id.* at 492). Additionally, the ALJ indicated that the hypothetical individual could use his fingers but would struggle with speed and accuracy. (*Id.* at 496). Thus, taken as a whole, the discussion between the ALJ and the vocational expert as to the nature of the fingering and manual dexterity limitation sufficiently conveys a limitation restricting Plaintiff to work that does not require speed and accuracy in fingering. As such, the Court finds that the ALJ did not err in posing hypothetical questions to the vocational expert and that the vocational expert's testimony may be relied on as substantial evidence at step five.

### C. Reversal Is Not Warranted Irrespective of Plaintiff's Ten-Year Application Process

Plaintiff additionally argues that reversal is warranted because disability has clearly been established and further delay would contravene justice. (Pl. Mov. Br. at 21). Because the Court finds that Plaintiff is not disabled under the Act, this argument must be rejected.

### V. Conclusion

For the foregoing reasons, the Court AFFIRMS the ALJ's decision. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**